**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FIREMAN'S FUND INSURANCE CO. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-3237 |
| | § | |
| NATIONAL UNION FIRE INSURANCE | § | |
| CO. OF PITTSBURGH, PA. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is an insurance coverage dispute arising out of a 2010 fire in an apartment complex in Webster, Texas. Three children died in that fire.

G&I VI Skylar Pointe, L.P. ("G&I") owned the apartment complex. G&I and Bell Partners, Inc. ("Bell") entered into an Apartment Management Agreement under which Bell managed the complex. The Management Agreement stated that G&I would indemnify Bell for liabilities incurred from Bell's actions in accordance with the Agreement's terms, and within the scope of Bell's authority as manager, or under G&I's direction. Bell would indemnify G&I for liabilities incurred from actions it took outside of the Agreement or that were due to its gross negligence.

The plaintiff, Fireman's Fund Insurance Company, insured Bell under a primary policy with a $1 million limit and an excess policy with a $25 million limit. The defendant, National Union Fire Insurance Company, insured G&I under an excess policy with a $50

million limit.

Victims of the apartment-complex fire sued G&I and Bell in Texas state court. In addition to the loss of life, the damages included extensive property damage and other losses. Fireman's Fund and National Union agreed to a settlement under which Fireman's Fund contributed $4 million and National Union contributed $5 million. Fireman's Fund filed this suit against National Union in December 2012, claiming that the indemnification clause in the Management Agreement required G&I to defend and indemnify Bell. Fireman's Fund seeks to recover from National Union the costs of defending and settling the underlying litigation on Bell's behalf. National Union contends that Fireman's Fund cannot recover based on G&I's indemnification obligations to Bell because Texas law does not permit direct actions against a liability insurer absent a judgment or agreement that the insured is liable to the claimant. National Union has moved for partial summary judgment dismissing Fireman's Fund's the indemnification claim. (Docket Entry No. 33). Fireman's Fund responded, (Docket Entry No. 34), and National Union replied, (Docket Entry No. 36).

Based on the pleadings, the motions and responses, the parties' submissions and arguments, and the applicable law, National Union's motion for partial summary judgment is granted based on the Texas no-direct-action rule. The reasons are explained below.

**I.     Background**

Fireman's Fund is a California corporation that insured Bell Partners, the manager of the Skylar Pointe apartment complex. Fireman's Fund issued Bell two policies in effect at

the relevant time. The first was a primary policy, DXX 8092 4774, with a $1 million policy limit. The second was an excess insurance policy, XAU 24030 8242, with a $25 million limit. Fireman's Fund's excess policy covered G&I as an additional insured.[1]

National Union, a Pennsylvania corporation, insured G&I, which owned the apartment complex. The $50 million excess policy National Union issued G&I stated that it covered "[a]ny person (other than [G&I's] employee[s]) or volunteer workers, or any organization while acting as [G&I's] real estate manager." (Docket Entry No. 27 at ¶ 12). This language extended coverage to Bell.

The indemnity clauses in the Management Agreement between Bell and G&I stated that G&I would indemnify Bell for liabilities arising out of actions Bell took within the Agreement's scope or at G&I's direction.[2] (Docket Entry No. 17, Ex. 1 at 30). The Agreement stated that Bell, as the property manger, would indemnify G&I for liabilities and

---

[1] Fireman's Fund's excess policy covered G&I's parent company, DRA Advisors, LLC. The parties agree that G&I was covered under DRA Advisors's policy with National Union. For clarity, this opinion refers to G&I and DRA Advisors as "G&I."

[2] The portion of the indemnity clause governing G&I's duty to defend and indemnify Bell stated:

> (a) Owner [G&I] hereby agrees to indemnify and hold Manager [Bell], its agents and employees harmless from and against any and all liabilities, claims, suits, fines, penalties, damages, judgments, losses, fees, costs and expenses (including reasonable attorneys' fees and court costs) incurred when Manager is acting in accordance with the terms and provisions of this Agreement and within the scope of authority conferred upon Manager hereunder, or when Manager is acting under the express direction of Owner, except for matters for which Manager indemnifies Owner under subclause (b) below.

(Docket Entry No. 17, Ex. 1 at 30).

costs caused by Bell's "actions taken outside of the scope of . . . th[e] Agreement or due to [Bell's] gross negligence."[3] (*Id.*, Ex. 1 at 31).

The families of the children killed in the fire and individuals who suffered property damage sued Bell and G&I in Texas state court, asserting that the companies' negligence and gross negligence caused the fire and the resulting deaths and damage. Bell and G&I each "tendered the defense of the suit to the other." (Docket Entry No. 27 at ¶ 16). Fireman's Fund did not defend G&I, and National Union did not defend Bell.

During the underlying litigation, National Union considered offers to settle the claims asserted against G&I. National Union informed Fireman's Fund that it was planning to settle those claims against G&I, but the proposed settlement would not cover Bell's liability. Fireman's Fund maintained that the indemnification provision in the Management Agreement obligated G&I, and National Union as G&I's insurer, to defend and indemnify Bell against all claims arising out of the apartment fire. National Union has consistently maintained that the indemnity provision did not require it to defend and indemnify Bell.

---

[3] The portion of the indemnity clause governing Bell's duty to and hold G&I harmless stated:

> (b) Manager [Bell] hereby agrees to indemnify and hold Owner [G&I] and its employees, harmless from and against any and all liabilities, claims, suits, fines, liabilities, damages, judgments, losses, fees, costs· and expenses (including reasonable attorneys' fees and court costs) which arise due to Manager's actions taken outside the scope of (or in default of) this Agreement or due to its gross negligence.

(Docket Entry No. 17, Ex. 1 at 31).

Both insurance companies agreed to settle the claims in the underlying lawsuit for $10 million, subject to a reservation of rights. Fireman's Fund contributed $4 million on Bell's behalf, and National Union contributed $5 million on G&I's behalf. (*See* Docket Entry No. 27 at ¶ 18). G&I's primary insurer, who is not a party to this suit, paid the remaining $1 million. Fireman's Fund and National Union agreed to reserve the disputes over allocating the settlement funds for later litigation. (*Id.*, Ex. A), leading to this suit.

Fireman's Fund sued National Union in this court in October 2012 to resolve the allocation disputes. (Docket Entry No. 1). National Union moved to dismiss on the ground that Fireman's Fund lacked standing to sue National Union under Texas law. (Docket Entry No. 17). While National Union's motion to dismiss was pending, Fireman's Fund filed an amended complaint. (Docket Entry No. 27). The amended complaint seeks to recover in whole or in part the money Fireman's Fund spent defending and settling the claims against Bell in the underlying lawsuit. The amended complaint seeks corresponding declaratory relief.

Fireman's Fund asserts the following bases for recovery:

- contribution based on G&I's obligation to defend and indemnify Bell under the Management Agreement;

- equitable subrogation based on G&I's obligation to defend and indemnify Bell under the Management Agreement;

- contribution and/or equitable subrogation based on the policies' "other insurance" clauses and Bell's right as an insured to recover from National Union;

5

- subrogated breach of contract based on National Union's failure and refusal to indemnify Bell;

- direct breach of contract based on National Union's repudiation of its agreement with Fireman's Fund to litigate allocation issues;

- fraud and fraud in the inducement based on National Union's alleged misrepresentations made to induce Fireman's Fund to fund an unfairly large portion of the settlement; and

- negligent misrepresentation and equitable estoppel, based on National Union's alleged misrepresentations.

(Docket Entry No. 27 at ¶¶ 20–38).

On June 24, 2013, this court converted National Union's motion to dismiss to a motion for partial summary judgment and allowed the parties to supplement the record. (Docket Entry No. 28). On August 25, 2013, National Union filed a brief in support of its motion for partial summary judgment. (Docket Entry No. 33). National Union clarified that it was seeking summary judgment only on whether the indemnity clause in the Apartment Management Agreement obligated National Union to pay Fireman's Fund for the costs it spent in defending and settling the claims against Bell. National Union did not seek summary judgment on a claim that it was obligated to pay a pro rata share of the settlement costs based on "other insurance" clauses in the respective policies. Fireman's Fund responded, (Docket Entry No. 34), and National Union replied, (Docket Entry No. 34).

The arguments and responses are analyzed below.

## II. The Legal Standard for Summary Judgement

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. PROC. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ." FED. R. CIV. PROC. 56(c)(1)(A). "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact, it does not need to negate the elements of the nonmovant's case. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet its initial burden, the

motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Id.* (internal quotation marks omitted). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Duffie*, 600 F.3d at 371.

**III.   Analysis**

Fireman's Fund argues that the indemnification clause in the Management Agreement requires National Union to pay the costs Fireman's Fund spent defending and settling the claims against its insured, Bell. Fireman's Fund argues that the undisputed facts show that at all relevant times, Bell was acting within the scope of the Management Agreement's terms. Fireman's Fund contends that it can enforce the Management Agreement's indemnity provision directly against National Union, even though neither insurance company is a party to that agreement. In the alternative, Fireman's Fund argues that it is the equitable subrogee of Bell and entitled to stand in its shoes and assert the rights against National Union that Bell

8

could assert.

Texas law is "well-settled" that a "tort claimant has no direct cause of action against the tortfeasor's liability insurer until the insured-tortfeasor is adjudged liable to the tort claimant." *Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.*, 244 S.W.3d 885, 888 (Tex. App.—Dallas 2008, pet. denied) (quoting *Jones v. CGU Ins. Co.*, 78 S.W.3d 626, 629 (Tex. App.—Austin 2002, no pet.)); *see also State Farm County Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989) ("[An injured third party] cannot enforce the policy directly against the insurer until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party."); *Reule v. Colony Ins. Co.*, 407 S.W.3d 402, 410 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Under the no-direct-action rule, a third-party claimant cannot sue an insurer unless its insured has a judgment imposing a legal obligation to pay the injured party damages, or the insured has agreed to that obligation. *See 15625 Ft. Bend Ltd. v. Sentry Select Ins. Co.*, No. 12-cv-600, 2014 WL 1052608, at *4 (S.D. Tex. Mar. 13, 2014); *Ohio Cas. Ins. Co.*, 244 S.W.3d at 888. Texas courts construe this rule as a standing rule. *See Ohio Cas. Ins. Co.*, 244 S.W.3d at 888; *Reule*, 407 S.W.3d at 410.

The no-direct-action rule bars Fireman's Fund's claim that it may recover as Bell's equitable subrogee under the Management Agreement's indemnity clause. An insurer-subrogee stands in the shoes of its insured-subrogor and may assert the same rights and remedies as the insured. *Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 85 (5th Cir. 2012); *Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007). The party against whom the insurer is asserting claims as the subrogee may assert the

same defenses it could assert against the insured-subrogor. Fireman's Fund's rights and remedies against National Union are limited to those that Bell could assert. There has been no judgment finding that G&I is legally obligated to pay Bell's damages. Nor has G&I agreed to assume that obligation. *See Ohio Cas. Ins. Co.*, 244 S.W.3d at 888. Under the no-direct-action rule, Bell lacks standing to assert its claim for indemnification directly against G&I's insurer, National Union. Because Bell lacks standing to sue National Union directly, Fireman's Fund, as Bell's subrogee, also lacks standing to do so.

Fireman's Fund's response, (Docket Entry No. 34), does not address the "well-settled" rule recognized in *Ohio Casualty* and other cases prohibiting a direct action against an insurer absent a judgment of liability or an agreement to assume liability on the part of its insured. Fireman's Fund cites three cases in support of its contention that it may sue National Union directly under the Management Agreement. These cases, *Employers Casualty Co. v. Transport Insurance Company*, 444 S.W.2d 606 (Tex. 1969), *American Indemnity Lloyds v. Travelers Property & Casualty Co.*, 335 F.3d 429 (5th Cir. 2003), and *Wal–Mart Stores Inc. v. RLI Ins. Co.*, 292 F.3d 583 (8th Cir. 2002), do not make Fireman's Fund's argument persuasive. In these cases, the plaintiff-insurers sought a pro rata contribution from the defendant-insurers based on "other insurance" clauses in the respective policies. The cases are distinguishable from the present case, in which one insurer seeks full indemnity based on agreements to which the insurers are not parties, not a pro rata contribution based on other insurance clauses.

In *Employers Casualty Co. v. Transport Insurance Company*, 444 S.W.2d at 607, the

10

defendant in the underlying suit, Prior Products, Inc., was insured by both Employers Casualty and Transport Insurance. Transport denied coverage and refused to defend Prior Products. Employers Casualty assumed the defense, negotiated a settlement, and then sued Transport for a pro rata share based on the policies' "other insurance" clauses. *Employers Casualty* is distinguishable because Fireman's Fund asserts that the indemnification clause in the Management Agreement obligates National Union to pay all of the costs Fireman's Fund spent defending and settling on Bell's behalf. This is distinct from Fireman's Fund's claim that National Union owes a pro rata share of these costs on the basis of the "other insurance" clauses. (Docket Entry No. 27 at ¶ 22). National Union has expressly stated that it is not seeking summary judgment on Fireman's Fund claim for pro rata contribution based on the "other insurance" clauses. (Docket Entry No. 33 at 4). *Employer Casualty* does not support Fireman's Fund's argument that it may sue National Union directly or as Bell's equitable subrogee based on the indemnification clause in the Management Agreement.

The other cases Fireman's Fund discusses in its response involved insurers seeking pro rata contribution based on the "other insurance" clauses. *See Am. Indem. Lloyds*, 335 F.3d at 435 ("[American Indemnity Lloyds] contends that by virtue of the identical 'other insurance' clauses in each policy . . . [it] is entitled to recover from [Travelers Property] half the amount . . . so expended . . . ."); *Wal–Mart Stores Inc.*, 292 F.3d at 587. These cases are inapplicable for the same reason.

Fireman's Fund also relies on *American Indemnity Lloyds* and *Wal–Mart Stores* for the proposition that the no-direct-action rule should not force it "to take the 'scenic route'" by

11

first invoking the indemnification clause against G&I, obtaining a judgment against that party, and then enforcing that judgment against National Union. (Docket Entry No. 34 at 7). In *American Indemnity Lloyds*, a subcontractor's employee was injured as a result of conduct within the scope of an indemnity clause that required a subcontractor to indemnify the contractor. 335 F.3d at 431. American Indemnity Lloyds insured the subcontractor under a policy that named the contractor as an additional insured. Travelers Property insured the contractor. American Indemnity Lloyds settled the injured employee's claims on the subcontractor's behalf and then sought pro rata contribution from Travelers Property based on the policies' "other insurance" clauses. The Fifth Circuit looked at the "other insurance" clauses and stated that generally, when two liability insurance policies issued by different insurers provide primary coverage to the same insured, one insurer is entitled to recover the excess it paid from the other insurer. *Id.* at 435. The Fifth Circuit noted, however, that the rule is subject to an exception where "the policy of the insurer seeking to invoke the 'other insurance' clauses also covers another insured who is liable to indemnify the insured in the policy of the other insurer." *Id.* at 436. In this circumstance, the indemnity agreement may shift the entire loss to the insurer seeking to invoke the clauses, notwithstanding the "other insurance" clauses. *Id.*

The *American Indemnity Lloyds* court relied on cases from other jurisdictions with similar facts, including the Eighth Circuit's decision in *Wal-Mart Stores Inc*. The court held that the indemnity agreement, not the "other insurance" clauses, controlled. *Id.* Allowing American Indemnity Lloyds to recover first from Travelers Property under the "other

insurance" clause and then having Travelers Property recover against the subcontractor based on the indemnification clause "would produce circuitous litigation." *Id.* at 437 (quoting *Wal–Mart Stores*, 292 F.3d at 593). At the end of that circuitous route, the parties would be in the same situation they would have been had there been no contribution under the "other insurance" clauses: the subcontractor would be liable to the contractor or its insurer, Travelers Property, under the indemnification clause. *Id.* at 437.

Under *American Indemnity Lloyds* and *Wal–Mart*, an insurer may use an indemnification agreement to avoid contributing a pro rata share based on "other insurance" clauses. But these cases do not allow an insurer to use an indemnification agreement to avoid the Texas no-direct-action rule. Fireman's Fund has not cited a case holding that, in this context, an insurer may use an indemnification clause as a sword to recover all the settlement and defense costs directly from another insurer, as opposed to a shield against pro rata contribution based on "other insurance" clauses.

Fireman's Fund, as Bell's equitable subrogee, lacks standing to assert its claim against National Union based on the indemnity clause in the Management Agreement.[4] The court grants partial summary judgment dismissing Fireman's Fund's claims against National Union based on the indemnification clause.

## IV. Conclusion

National Union's motion for partial summary judgment, (Docket Entry No. 33), is

---

[4] For similar reasons, Fireman's Fund lacks standing to sue National Union directly for contribution based on the Apartment Management Agreement's indemnification clause.

granted. A status and scheduling conference is scheduled for **April 4, 2014, at 8:30 a.m.** in Courtroom 11–B.

SIGNED on March 25, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge